UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MICHAEL D. STOVER | No. 25 CR 540<br><br>Judge Lindsay C. Jenkins |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The UNITED STATES OF AMERICA, by its attorney, ANDREW S. BOUTROS, United States Attorney for the Northern District of Illinois, respectfully submits its position paper as to the factors in sentencing and asks this Court to sentence defendant Michael D. Stover to sentence within the Guidelines range.

Threats of violence cause real harm. They instill fear, disrupt lives, and undermine society's sense of security. Knowing this, defendant used social media to make repeated threats and advocate violence against elected officials, their family members and law enforcement.

The Court's sentence should reflect the seriousness of defendant's crimes and send a message to the community that such actions will result in serious consequences. A sentence within the Guidelines would be sufficient, but not greater than necessary, to satisfy the principles set forth in the Sentencing Guidelines and 18 U.S.C. § 3553(a).

## I. Offense Conduct[1]

In February 2025, defendant began posting messages and images through his social media accounts threatening violence against specific elected persons and immigration officers. As detailed in the United States Probation Office Presentence Report ("PSR"), on February 4, 2025, the first captured post by defendant advocating for violence was a photograph of rifle bullets with the names of well-known elected politicians, their family members, and other government workers written on them. PSR ¶ 6. Only a few days after he made that post, defendant was interviewed by law enforcement and admitted to making the post. PSR ¶ 7. Law enforcement also noted that defendant had an Illinois Firearms Owner's Identification card which authorized him to purchase and possess firearms and ammunition. *Id.*

Approximately two months later, beginning in April 2025, and using a different social media platform, defendant again posted threats. PSR ¶ 8. This time defendant posted at least five messages advocating violence, including by the use of firearms, against the government, some which depicted the defendant wearing face paint and displaying a rifle. PSR ¶¶ 8,9. Defendant was again interviewed by law enforcement and admonished about his posts. PSR ¶ 9. Later that same day law enforcement again went to defendant's home, this time in response to a domestic-disturbance 911 call. PSR ¶ 11.

[1] The information in this section is derived from reports and other materials provided to Probation in connection with the preparation of the PSR. At sentencing, a district court may rely upon information contained in a PSR so long as the information is well-supported and appears reliable. *United States v. Salinas*, 365 F.3d 582, 587 (7th Cir. 2004).

Approximately two months later, beginning in July 2025, defendant again posted an additional six messages stating his disdain for law enforcement actions and advocating for violence and the death of law enforcement officers. PSR ¶ 14.

As charged in the indictment, one particular threat, on July 7, 2025, defendant posted:




As stated in his plea declaration, defendant knew the post contained a threat to injure immigration authorities and defendant posted it knowing that it would be viewed as a threat to injure. Dkt. 43.

## II. Guideline Calculations

The government agrees with the criminal history and offense level calculations set forth in the PSR. The government agrees that pursuant to Guideline § 2A6.1(a)(1), the base offense level is 12. PSR ¶ 25. Because the offense involved more than two threats the offense level is increased by two levels, pursuant to Guideline § 2A6.1(b)(2). PSR. ¶ 26. Defendant's threats were directed against elected leaders and immigration officers and per his statements to Probation, the threats to those

individuals were motivated by their status. PSR ¶¶ 15-17, 28. Therefore, the offense level, pursuant to Guideline § 3A1.2(b), is increased by six levels.

The government agrees with Probation's conclusion that defendant has clearly and timely demonstrated recognition and affirmative acceptance of personal responsibility for his criminal conduct, and therefore, defendant's offense level is reduced by 3 levels pursuant to Guideline § 3E1.1. *See* PSR ¶¶ 33-34.

Defendant has no criminal history. PSR ¶¶ 37, 41, 43-46.

Thus, the adjusted offense level is 17 and defendant is in criminal history category I, which, when combined, result in an advisory Guidelines range of 24-30 months' imprisonment. PSR ¶ 97.

## III. The Factors Set Forth in 18 U.S.C. § 3553(a)

Section 3553(a) requires the Court to impose a sentence that is "sufficient, but not greater than necessary," to comply with the purpose of sentencing.[2] In order to determine the sentence to impose, the Court must consider the statutory factors listed in § 3553(a)(1)-(7). One of those factors is the advisory range set by the Sentencing Guidelines, and another is the Commission's policy statements. § 3553(a)(4), (a)(5). Although the Sentencing Guidelines are advisory only, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the

[2] Those purposes are the need for the sentence "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).

### A. Nature And Circumstances Of The Offense And The Need To Protect The Public

The circumstances of the offense are serious and the escalation of defendant's course of conduct is even more concerning. Defendant repeatedly posted public calls for violence against the government and law enforcement. The public may vehemently disagree with elected persons, government policy and law enforcement actions, and there are a myriad ways for individuals to communicate such disagreement under the First Amendment. But calling for people to get hurt because you disagree with them is unacceptable.

While defendant may not have intended to act on the threats, the threatened individuals did not know that, and the public did not know that. These messages calling for murder no doubt sow fear amongst all.

### B. History And Characteristics Of Defendant

Defendant, 34 years old, was born and raised in the south suburbs of Chicago. PSR ¶¶ 49-50. Indeed, defendant's background contains mitigating factors. By defendant and his spouse's account, defendant had a difficult childhood. PSR ¶¶ 51-55. Defendant has encountered challenges as an adult and has made efforts to address them. PSR ¶¶ 69, 71-72. Defendant reported working and having specialized training, but since this case has been limited in what he can do for work. PSR ¶¶ 83-91.

The Court should consider these factors and the other factors included in the PSR in assessing defendant's history and characteristics.

### C. Seriousness Of The Offense, And The Need To Promote Respect For The Law, Provide Just Punishment, Afford Adequate Deterrence, And Protect The Public

Defendant's offense conduct was unquestionably serious. As the Supreme Court articulated in *Elonis v. United States*, 575 U.S. 723, 746 (2015), "[t]rue threats inflict great harm and have little if any social value. A threat may cause serious emotional stress for the person threatened and those who care about that person, and a threat may lead to a violent confrontation."

A Guidelines sentence in this case also will afford adequate deterrence. Regarding general deterrence, a Guidelines sentence will send a message to the public that true threats of violence, and the fear and disruption they cause, have consequences and will not be tolerated. *See Counterman v. Colorado*, 600 U.S. 66, 74 (2023) ("True threats subject individuals to fear of violence and to the many kinds of disruption that fear engenders."); *see also United States v. Pratersch*, 808 F. App'x 768, 771 (11th Cir. 2020) (finding guideline sentence substantively reasonable based on "the need to deter [the defendant] and others from threatening officials based on their political viewpoint and the seriousness of the offense"). Defendant's sentence should reflect the need to deter others from similar conduct.

## IV. Supervised Release Conditions

The § 3553(a) factors addressed above also support the imposition of a term of supervised release. In the government's view, this aspect of defendant's sentence is an equally important component of defendant's sentence. A term of supervised

release with appropriate conditions will provide defendant with the treatment and structure necessary for his successful reintegration into the community.

**A. Proposed Mandatory Conditions of Supervised Release**

The following conditions are required by law:

- (1) The defendant shall not commit another federal, state or local offense. U.S.S.G. § 5D1.3(a)(1).
- (3) The defendant shall not unlawfully possess a controlled substance. U.S.S.G. § 5D1.3(a)(2).
- (6) The defendant shall cooperate in the collection of a DNA sample if the collection of such a sample is required by law pursuant to Title 42, United States Code, Section 14135a(a). U.S.S.G. § 5D1.3(a)(8).
- (7) The defendant shall refrain from any unlawful use of a controlled substance and submit to one drug test within 15 days of release on probation and at least two periodic drug tests thereafter for use of a controlled substance. U.S.S.G. § 5D1.3(a)(4).

**B. Proposed Discretionary Conditions of Supervised Release**

The following conditions are intended to facilitate the probation officer's supervision of the defendant, which is important to promote the defendant's respect for the law and to deter the defendant from committing future crimes:

- (4) The defendant shall work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses him from doing so. U.S.S.G. § 5D1.3(b)(2)(G).

- (6) The defendant shall refrain from knowingly meeting or communicating with any person whom the defendant knows to be engaged in criminal activity. U.S.S.G. § 5D1.3(b)(2)(H).
- (8) The defendant shall refrain from possessing a firearm, destructive device, or other dangerous weapon. U.S.S.G. § 5D1.3(b)(2)(J).
- (9) The defendant shall participate, at the direction of a probation officer, in a mental health treatment program, and must take any medications prescribed by the mental health treatment provider. U.S.S.G. § 5D1.3(b)(3)(E).
- (14) The defendant shall not knowingly leave the judicial district in which he is being supervised without the permission of the court or the probation officer. U.S.S.G. § 5D1.3(b)(2)(C).
- (15) The defendant shall report to the probation office within 72 hours of his release from imprisonment and shall report to the probation officer as directed by the probation officer. U.S.S.G. § 5D1.3(b)(2)(B).
- (16) The defendant shall permit the probation officer to visit his home or elsewhere at any reasonable time, and permit confiscation of any contraband observed in plain view of the probation officer. U.S.S.G. § 5D1.3(b)(2)(F).

- (17) The defendant shall notify the probation officer within 72 hours of any change in his residence, employer, or workplace. U.S.S.G. § 5D1.3(b)(2)(E).
- (18) The defendant shall notify the probation officer within 72 hours of being arrested or questioned by a law enforcement officer. U.S.S.G. § 5D1.3(b)(2)(I).
- (23) The defendant shall participate in cybercrime management[3] and inform probation of all computer devices possessed or accessible to him.

*Argument*

Defendant has demonstrated through a series of posts, even after several warnings by law enforcement, that he simply cannot control his urges to advocate for violence. Such a condition will allow probation to monitor defendant's online presence and ensure that he is able to learn how, if he must, use social media. The condition does not prohibit defendant from using computer devices and does not prohibit defendant from using the internet and is narrowly tailored to aid Probation's monitoring of defendant while he is on supervised release.

**C. Proposed Special Conditions of Supervised Release**

- (6) The defendant shall provide a probation officer with access to any requested financial information necessary to monitor compliance.

[3] Further details regarding the condition are set for in the PSR at 21-24.

- (11) The defendant shall not enter into any agreement to act as an informer or special agent of a law enforcement agency without the permission of the court.

All of the above supervised release terms are narrowly tailored to facilitate supervision by the probation officer, deter the defendant from future crimes, support defendant's rehabilitation and reintegration into the community, and ensure that he is engaged in lawful pursuits rather than criminal activity.

## V. Conclusion

For the foregoing reasons, the United States request that this Court sentence defendant as stated above.

Respectfully submitted,
ANDREW S. BOUTROS
United States Attorney

By: *s/ Shawn McCarthy*_____
SHAWN MCCARTHY
Assistant United States Attorney
United States Attorney's Office
219 South Dearborn Street
Chicago, Illinois 60604

Dated: August 19, 2026